**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SEKEMA J. GENTLES | : | |
| | : | |
| Appellant | : | No. 1291 EDA 2025 |
| | : | |

Appeal from the Judgment of Sentence Entered April 18, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-MD-0004897-2024

BEFORE:   McLAUGHLIN, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED JULY 21, 2026**

Sekema J. Gentles ("Gentles") appeals *pro se* from the judgment of sentence entered after the trial court convicted him of indirect criminal contempt ("ICC") for violating a protection from abuse ("PFA") order and ordered him to pay $300 plus costs.[1]  Gentles challenges the sufficiency and weight of the evidence.  The Commonwealth has filed a motion to quash this appeal, and Gentles has filed an application for relief to supplement the record with a copy of the hearing transcript.  For the reasons that follow, we deny the Commonwealth's motion to quash, grant Gentles's application for relief and, finding no meritorious issues in this appeal, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] *See* 23 Pa.C.S.A. § 6114.

The facts giving rise to this appeal are straightforward. Gentles is the ex-husband of Tiffany Flores ("Flores"), and they have two children ("the children"). *See* N.T., 4/18/25, at 6-7. Flores obtained a final one-year PFA order against Gentles in May 2024. *See id*. at 8, 10-11. A custody court modified the PFA order to permit contact between Gentles and Flores about custody matters and noted Gentles's compliance with custody orders would not violate the PFA. *See id*. at 11, 22. The custody court also prohibited Gentles and Flores from making disparaging remarks about each other in the presence of their children. *See id*. at 21.

In December 2024, Gentles sent Flores an e-mail, which, verbatim, read as follows:

> Good morning,
>
> I recently spoke with all the Officers you spoke with in an attempt to have me arrested while picking up my children on my schedule days at school. I also received the citation from Officer Buarry for my allege damage to your vehicle.
>
> Based on the fact that your two allegations were unfounded and to your dismay, I was NOT arrested. I will reconvene visitation with my children effective this Tuesday. **The amount of damage that you have caused to my vehicles, hitting it with bricks, punching it with your fist, throwing knives and scratching it up or ramming into it with your vehicle is the highest form of hypocrisy. The fact that you are choosing to go the extreme routes you're going to hurt and incarcerate me, let me be clear moving forward. Should you continue with this kind of behavior in an attempt to ruin my life and have me in and out of prison I will start taking action against you. I will contact Immigration, I will send them all the videos, audios and police reports of your constant harassment. I will make whatever officer is handling your Vawa know The kind of person you are. And if you continue to try to sabotage me in any way, I will swiftly respond with equal**

> ***tenacity. I will no longer try to protect you and your ability to stay into this country. I Now see you as an enemy of mine and I want nothing to do with you. If you come to the school during my custody exchange for the kids, I will take swift and decisive action. If you show up again at Michele's house,***[2] ***I will take swift and decisive action against you***. During my custodial time with the children, it is your responsibility to make sure you are sending them with everything they need As far as Clean clothes, socks, and underwear. ***Your irresponsibility does not give you access or right to show up at my girlfriend's house And caused a disturbance and because you are aware that you are armed and protected with a PFA that you got Under false allegation And retaliatory animus you believe you can break the law unchecked. I will prove you wrong.*** Your adherence is greatly appreciated.

Commonwealth's Exhibit 2 (emphases added).

Flores reported Gentles's e-mail to police, and an officer filed a criminal complaint charging him with ICC. Gentles retained private counsel and proceeded to a hearing at which Flores testified to the above-stated facts.

Gentles also testified at the hearing. Gentles initially asserted his e-mail discussed custody matters, because it referenced a possible change in custodial days, discussed his picking up the children from school, and referenced how Flores had been calling police to try to "jam [him] up" during these pick-ups. N.T., 4/18/25, at 28-29. He also noted his e-mail mentioned transfers of the children and clothes. ***See id***. at 29. Nevertheless, Gentles acknowledged other parts of his email did not concern custody matters. ***See id***. As to those parts, Gentles explained Flores had been going to his girlfriend's house, harassing his girlfriend, and creating disturbances in the

_____

[2] "Michele" is Gentles's girlfriend. ***See*** N.T., 4/18/25, at 16.

neighborhood by honking her car horn, throwing clothes out of her car, and using expletives to insult him and his girlfriend. *See id*. at 26. Gentles stated he repeatedly reported these incidents to the police, but police did not stop Flores, and Flores persisted. *See id*. at 26-27.

Gentles also claimed Flores presented police with an "outdated" PFA order to manipulate the officer to charge and have him arrested in the present case. *Id*. at 28. Gentles asserted the custody court had modified the PFA order to allow him to contact Flores, and he suggested the custody orders contained no "barometer" as to what he could discuss aside from the prohibition against disparaging Flores in the presence of the children. *Id*. at 30-31, 33. Gentles suggested the children had no access to the e-mail, and he, therefore, complied with the custody orders because he did not disparage Flores in the children's presence. *See id*. at 31.

The trial court found Gentles in "technical" violation of the PFA order and ordered him to pay $300 plus costs. *Id*. at 38-39. Although there is no indication that Gentles's counsel had withdrawn from representation, Gentles filed a timely *pro se* motion for reconsideration challenging the sufficiency and weight of the evidence. The trial court denied the *pro se* post-sentence motion by order served on Gentles's counsel.

Gentles then timely filed a *pro se* notice of appeal, and the trial court issued an order for him to file a Pa.R.A.P. 1925(b) concise statement.[3] The docket indicates the trial court served the order on Gentles by certified mail and Gentles's counsel of record by electronic service. Gentles did not file a Rule 1925(b) statement, and, in June 2025, the trial court issued a Rule 1925(a) opinion concluding Gentles waived all claims in this appeal. **See** Trial Court Opinion, 6/23/25, at 1.[4]

In July 2025, Gentles filed in this Court a motion for leave to proceed *pro se*. In August 2025, this Court remanded for a determination of Gentles's eligibility for court-appointed counsel, and, if so eligible, whether Gentles wished to waive that right to counsel. **See** Order, 8/11/25 at 1.[5] The trial court responded to this Court's order and attached a completed and signed waiver of counsel form.

Gentles filed a *pro se* brief in this Court, which, in relevant part, noted the trial court's opinion concerning waiver pursuant to Rule 1925 and alleged, in relevant part, his counsel at the time was ineffective *per se*. The Commonwealth thereafter filed a motion to quash this appeal because Gentles

---

[3] The court's order for a Rule 1925(b) statement contained the required contents of such orders. **See** Pa.R.A.P. 1925(b)(3).

[4] It is unclear whether the trial court served Gentles with a copy of its Rule 1925(a) opinion.

[5] This Court's order did not address the trial court's opinion that Gentles's failure to file a Rule 1925(b) statement waived all issues for appeal, nor did the order request the trial court to consider the possibility of a breakdown or make findings of fact as to the status of Gentles's counsel of record.

had not ordered a transcript of the hearing and did not comply with the trial court's order for a Rule 1925(b) statement. Gentles filed an answer. The Commonwealth's motion was deferred to this panel for consideration. This Court subsequently received a copy of the transcript of the indirect criminal contempt hearing, as well as Gentles's application for relief to supplement the record with the transcript. These matters are now before this panel.

We initially consider the Commonwealth's motion to quash because Gentles did not order transcripts and did not file a Rule 1925(b) statement. As to Gentles's failure to order a transcript, Gentles has taken steps to cure that deficiency, and the record now includes the transcript. Therefore, we will not dismiss the appeal on that basis and grant Gentles's application to supplement the record with the transcript.

As to Gentles's failure to file a Rule 1925(b) statement, we decline to find waiver. Despite the confusion created by Gentles's *pro se* filings, Gentles's counsel remained his attorney of record from the time the trial court issued its order for a Rule 1925(b) statement, until this Court's remand and Gentles's waiver of his right to counsel. Pursuant to Pa.R.A.P. 1925(c), this Court may, under appropriate circumstances, remand to permit an appellant to file a *nunc pro tunc* statement due to counsel of record's failure to file a Rule 1925(b) statement.[6] This Court could have done so when previously

_____

[6] **See** Pa.R.A.P. 1925(c)(2) ("Upon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing or
*(Footnote Continued Next Page)*

- 6 -

remanding this matter to determine whether Gentles was entitled to the appointment of counsel and waived his right to appellate counsel. Doing so now would unnecessarily squander judicial resources, where, as here, the record is straightforward, Gentles's claims are readily discernable, and this Court's ability to address his claims is as straightforward as the record. For these reasons, we deny the Commonwealth's motion to quash and will consider the substantive issues raised in this appeal.

Gentles raises the following substantive issues for review:

I.     Whether the evidence is sufficient to support a finding of guilt as a matter of law?

II.    Whether trial court violated constitutional due process and statutory requirements in imposing indirect criminal contempt?

III.   Whether the trial court verdict is contrary the weight of the evidence as a matter of law?

Gentles's Brief at vii (reordered and renumbered).[7]

_____

service *nunc pro tunc* of a Statement . . . and for a concurrent supplemental opinion. If an appellant has a statutory or rule-based right to counsel, good cause shown includes a failure by counsel to file or serve a Statement timely or at all); Pa.R.A.P. 1925(c)(3) ("If an appellant represented by counsel in a criminal case was ordered to file and serve a Statement and either failed to do so, or untimely filed or served a Statement, such that the appellate court is convinced that counsel has been *per se* ineffective, and the trial court did not file an opinion, the appellate court may remand for appointment of new counsel, the filing or service of a Statement *nunc pro tunc*, and the preparation and filing of an opinion by the judge").

[7] Gentles raised a total of six issues for review in his brief; however, three issues related to the Rule 1925 issues are already addressed in this decision.

In his first two issues, Gentles claims the evidence was insufficient to support the finding he was in indirect criminal contempt of the PFA order. In considering a sufficiency of the evidence challenge, the Superior Court reviews evidence and all reasonable inferences from the evidence as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[ ]finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact[ ]finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact[ ]finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brumbaugh*, 932 A.2d 108, 109-10 (Pa. Super. 2007) (citations and quotation marks omitted).

"[M]uch reliance is given to the discretion of the trial judge[ ]" when reviewing a conviction for contempt. *Commonwealth v. Boyer*, 282 A.3d 1161, 1167 (Pa. Super. 2022) (citations omitted). Because of this, our review is limited to whether the facts support the trial court's decision. *See Boyer*, 282 A.3d at 1167. A reversal is only appropriate "when there has been a plain abuse of discretion." *Id*.

ICC occurs when a person violates an order or decree given by a court outside of the presence of the court. *See Boyer*, 282 A.3d at 1163 n.1. To establish ICC, the Commonwealth must prove four elements: (1) that the court's order was sufficiently definite, clear, and specific, and left no doubt in the contemnor's mind as to the prohibited conduct; (2) the contemnor had notice of the order; (3) the act constituting the violation was volitional, not accidental; and (4) the contemnor acted with wrongful intent. *See Brumbaugh*, 932 A.2d at 110.

Gentles's arguments go to the first and fourth elements of ICC.[8] Gentles acknowledges the PFA order contained a no-contact provision, but he focuses on the custody orders, which, he states, "permitted direct communication for co-parenting." Gentles's Brief at 6. He contends the PFA and custody orders were conflicting and "created ambiguity" as to what types of communications were permissible, and the trial court's ICC finding amounted to an absurd result. *Id*. at 7, 11. He maintains his e-mail complied with the custody orders, and the trial court, therefore, erred in finding his e-mail violated the PFA order. *See id*. at 9. He further contends he acted in a good-faith belief that the e-mail complied with the custody order, which negated any wrongful intent. *See id*. at 10.

_____

[8] Gentles's due process argument is essentially a repetition of the sufficiency of the evidence requirements that a conviction be supported by a finding, beyond a reasonable doubt, on all elements of ICC, *i.e.*, that his violation of the PFA order constituted "willful disobedience" or was "deliberate." Gentles's Brief at 15.

Gentles's arguments merit no relief. Gentles appears to suggest that his e-mail constituted a communication for the purpose of "co-parenting" the children, as was permitted by the custody orders. The record belies that contention. Only a small part of Gentles's e-mail related to the children, let alone co-parenting. The majority of the e-mail consists of his complaints that Flores had damaged his car, was ruining his life, and harassing him and his girlfriend, as well as the declarations that Flores was now his enemy and he would be willing to contact immigration or other law enforcement authorities to "expose" Flores. *See* Commonwealth's Exhibit 2. Gentles's own testimony at the hearing contradicts any assertion he believed the contents of the e-mail related to custody or "co-parenting" issues. *See* N.T., 4/18/25, at 29-31 (explaining he included statements about non-custody matters because he was "at his wit's end" about Flores harassing him and his girlfriend). Under these circumstances, there was sufficient evidence that the PFA order, as modified by the custody orders, was clear, definite, and specific and that Gentles acted with the required wrongful intent by contacting Flores for purposes unrelated to the custody or co-parenting of the children. *See* ***Commonwealth v. Taylor***, 137 A.3d 611, 616-17(Pa. Super. 2016) (*en banc*) (affirming ICC convictions where a PFA order prohibited direct and indirect contact with protected persons, custody orders allowed contact for custody purposes, but the defendant contacted protected persons about financial issues concerning his former residences).

In his remaining issue, Gentles asserts his ICC conviction was contrary to the weight of the evidence. *See* Gentles's Brief at 12. He contends the trial court abused its discretion by failing to account for the ambiguity created by the conflicting PFA and custody orders. *See id*. However, Gentles does not present a true weight of the evidence claim, the remedy for which would be a new hearing, not the dismissal of the charge. *See Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (distinguishing challenges to the sufficiency and weight of the evidence). In any event, for the reasons set forth above, we discern no abuse of discretion in the trial court's determinations that the PFA order, as modified by the custody orders, was clear, definite, and specific, that Gentles acted with wrongful intent, or that Gentles had not acted under a good-faith belief he was in compliance with the custody orders simply because he did not disparage Flores in the presence of the children. *See Boyer*, 282 A.3d at 1167.

Judgment of sentence affirmed. Application to quash denied. Application to supplement the record granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/21/2026

- 11 -